24-3168AG and 24-3298AG Siren Retail Corporation v. National Labor Relations Board and Workers United. I understand counsel for Siren and for Workers are here live and counsel for the NLRB will be appearing by Zoom and that appears to be Mr. Cantor. We see you on the Zoom screen. Can you just say something out loud and confirm you can hear us and we can confirm that we hear you? I can hear your honors loud and clear. Great. We just want to make sure that you don't miss any of the arguments to which you will be responding. Good morning, counsel, and I understand you would like to reserve two minutes for about that, right? Correct, correct, your honor. Okay, you may proceed whenever. Thank you. Good morning and may it please the court, Amy Saharia of Williams and Connolly for a petitioner at Siren Retail, which I'll call Starbucks. Since Congress enacted the NLRA nearly a century ago, countless employers in this country have required employees to follow a dress code or to wear a uniform. But in this case, the board invalidated Starbucks' dress code at its New York City grocery, even though Starbucks allows its partners to display union insignia. The court should deny enforcement for several reasons. First, as to the board's conclusion that Starbucks must allow partners to wear more than one union pin, this court has already held that Starbucks' one union pin policy does not violate the NLRA. Second, as to the board's invalidation of Starbucks' policy prohibiting shirts with logos and pins with political, religious, or personal messages, this court should follow the Fifth Circuit in holding that the NLRA does not give the board authority to declare all employer dress codes in this country presumptively unlawful, even whereas here they allow employees to display union insignia. The board erred in adopting a one-size-fits-all approach that treats Starbucks' policies as tantamount to a complete ban. But at a minimum, even if special circumstances were required, the board improperly conducted that inquiry for some of the same reasons as the Eighth Circuit recently concluded in the Home Depot case, which we submitted in a 28-J letter. Unless the court wishes to start elsewhere, I will start with the one union pin policy. Our submission to the court, of course, is that this case is governed by this court's prior decision in Starbucks. The two cases involve the same policy as the ALJ recognized at Special Appendix 14, and the two cases involve the same exact question, whether the NLRA gives employees the right to adorn their Starbucks aprons with as many pins as they want. Your adversary is saying that the grocery has a different ambiance, a different kind of situation. People wear a lot of varieties of clothes there to commit to a Starbucks dress code, and therefore it's a different case than the original Starbucks case, which dealt with one local small Starbucks establishment. Correct, that is their argument, but those facts are not relevant to the rationale that this court adopted in its prior decision. In that decision by Judge Newman, the court explained that Starbucks, number one, appropriately gave its employees the right to display union insignia with one pin, and that requiring more than one pin would detract from the messages on Starbucks' other pins, the approved pins, which are just as much a part of Starbucks' image as any other part of its dress code. And the same is true here. Employees in the grocery wear multiple pins. Those pins convey Starbucks' approved messages, and allowing employees to wear multiple union pins across their aprons would detract from the messages that Starbucks conveys through other pins on the Starbucks-issued aprons that employees wear at the grocery. Would you mind turning to the T-shirts? Of course, John. And why don't we start with what do you think the legal framework should be for our analysis? You'll touch on the merits, obviously, but why don't we talk about how the parties think we need to conceptualize this? Sure. So the Supreme Court has explained that when assessing whether an employer has interfered with employees' Section 7 rights in violation of Section 8A1 of the NLRA, the test is a balancing of the interference with employees' Section 7 rights and the employer's legitimate business interest. Now, in the case of complete bans on any union expression or a ban on a specific union message, the Supreme Court has endorsed a presumption of interference, and the Board has articulated a special circumstances test that is very difficult to meet and that it keeps adding to to make it very difficult for employers to overcome that presumption. And that's essentially the Tesla test, is that it? That is the Tesla test. So what the Board did in Tesla is it took that presumption that has typically applied in cases of complete bans on union insignia, and it applied it across the Board in a one-size-fits-all way to any employer rule that has any incidental consequence on an employee's ability to display union insignia, like the shirt rule here. And as the Fifth Circuit explained in Tesla, one irrational aspect of that extension is that it takes no account of the extent of interference with employees' Section 7 rights. Could I ask you to step back even a little bit further, following the framework notion that our presider asked about, since we're looking at what standards the Board should be applying, are we deferring to the Board at all in its articulation or application of those standards? Are we not deferring at all? Does Loper-Bright have any purchase here? What is the framework for our court's review of what the Board did in its understanding of those standards? Sure. So we think the Court is not deferring to the Board. Even before Loper-Bright, the Court explained that the Court reviews the Board's legal conclusions de novo. But we think certainly since Loper-Bright, as multiple circuits, how Loper-Bright does away with any deference to the Board on legal questions. But are we talking still about the application of the general notion of restraint, coercion, or impairment, interference, I guess, in a very factual, heavy setting? And so that's not sort of a legal question, the way Loper-Bright focused on. This is something that preceded Chevron, preceded Loper-Bright, where the Court deferred to the Board's understanding of what an employee is and what interference is, in a very kind of specific way. Shouldn't we owe the Board that deference here? Not here, where the Board has essentially declared all dress codes in the country presumptively unlawful, where it has applied a presumption across the Board in every setting, no matter the amount of interference or non-interference with Section 7 rights. That is a situation where this Court needs to exercise its independent authority, as the Fifth Circuit did in Tesla, to say, this just can't be right. There's nothing in the NLRA that suggests all dress codes are presumptively unlawful. So let's take your position a little further and then talk about the possible departure from Tesla, the special circumstances, into a balancing test, like the Fifth Circuit did. Correct, yes. And my understanding is that the Fifth Circuit was not acting in a vacuum there, that the Republic Aviation was set back, that balancing formula back in 1945 and it's never been changed. Is that correct? Yes, Your Honor. The Supreme Court and Republic Aviation, and in multiple cases since then, has articulated the idea that the Board and courts need to balance the extent of the interference with the employee's Section 7 rights with the employer's legitimate interest. That is what the Board did in the Walmart case, which it then overruled in Tesla and applied the same strict presumption in every case, even ones like this one, where we do allow employees to wear a union insignia through a pin on the most visible part of their dress, I would add, right there on the front of their apron, where they communicate other messages. If you were correct, let's say we would agree with you on that point, the result would be a remand to the NLRB, right, saying you got the legal standard wrong, go back and rethink it, right? Yes, Your Honor. That's the most you'd get from us. That's what the Fifth Circuit did in Tesla, and we agree that if that was the route the court takes, the remedy would be a remand. Now, the other, I think, path available to the court is the path that the East Circuit took in Home Depot. Now, the Home Depot didn't challenge the Tesla rule, it just argued about the Board's application of that rule. But the court thought that special circumstances was still the right test, but that the Board applied it too strictly in this case. It could just act in my enforcement on that ground for the reasons that the Eighth Circuit did in Tesla. But let's say for the sake of argument, we thought that the Board applied the correct test. At that point, what if any level of deference kicks in? And I'm thinking outside this labor context, I'm thinking to some other agency decisions that we've been looking at. We look at them all the time in the immigration context, say for the Board of Immigration Appeals. And the Supreme Court has been telling us lately that even things that we're entitled to review from the BIA, like cancellation of removal, which is largely a discretionary call by the agency, there are chunks of that that we can review. And if it's a pure, abstract question of law, we review it de novo. But if it's an application of a legal standard to a set of undisputed facts, then we're supposed to give some unspecified level of deference to the agency. How does that play out here? We think that the application of law to these facts, which are completely undisputed, is still a legal question. And I would point the court to... Why would it not be Wilkinson v. Garland? It's a legal question, a question of law with little quotation marks around it as a term of art, meaning that we have jurisdiction. But that's under some very particular jurisdiction-stricken statutes in the IMA. But then the Supreme Court has said, when we review the agency's application of a legal standard to an undisputed set of facts, it's not the word they use, but it's sort of facty. So we're supposed to give some level of deference. And in our court, we have said, well, that level of deference is going to be in clear error. So why is it that we would provide some level of deference when we know what the law is and we know what the facts are, and it's just a case of meshing them together? We give deference in that standard. And I think you're suggesting we would give no deference in this administrative review. Why would that be? In the prior two special circumstances cases of this course, this is decided, of course, one being Starbucks, the other being the Mid-State Telephone case. The court seemingly did not defer to the board's... Well, you don't always win. The agency doesn't always win when we give deference. I mean, we can give deference and they still lose. We say, we'll give you a certain amount of leeway. But you're just out of bounds. What you've done is, that just can't fit. I think even if a court thought that some deference was owed, here we would submit that, even accepting special circumstances as the correct framework, the board still committed what we would call legal error in how it conducted that analysis. The most important being, treating as completely irrelevant, the fact that we do allow employees to express union support by wearing a tin. At Special Appendix 16, the ALJ said, that's irrelevant. How can that be irrelevant? This court has always treated that as a relevant factor in the special circumstances analysis. That is the kind of legal error in a special circumstances analysis that we would submit, would cause the court not to give deference to the decision. Why would you throw out some kind of deference just because of the, you know, of the fact that we're dealing here with, assuming it doesn't no longer apply. But we would still, we would still, you know, could afford some deference to the agency. More than nature, I'm thinking, if you did more deference. Sure. We're, we're, we're, take it for whatever it's worth. If it's a lie of Shakespeare, take it for whatever it's worth, or, or, or just, you know, look at, look at the rights and see whether, whether we're persuaded, et cetera. It's, it's just for, for persuasion. I, I, we would completely agree that under Loper-Bright, courts still can give, give more right deference. Isn't that the deference that we're really talking about, after, after Loper-Bright? I, I think that's correct, and we think this decision does not have the power to persuade, and therefore the court should not, should not defer to it. Right. And what about, what about regs that are passed by the agency in their rulemaking capacity, the extent to which they're owed deference or not? Those refer to be legal rules. Obviously, they could violate the Constitution, or they could be second-guessed in other ways, but do we give greater deference if there, if there are regs that are in place? No, I don't think so. The court defers to adjudications and regulations, or does not defer to them the same way. I think that now the board is kind of unique among agencies, in that virtually all of its rulemaking occurs by adjudication and not by rulemaking, and, and the Supreme Court has noted on, on that anomaly of this particular agency. Well, do you have a question? Go ahead. Okay. If we could, let's assume for the sake of argument, these parameters, because I want to ask about the T-shirts. Yes. Let's just assume that we're in the special circumstances world, okay? That's the test that applies, and that we wouldn't disturb it. Would you explain to me, besides, I think I heard you make the argument that you would win, your party would win, even under special circumstances, because it's not a total ban, because there could be a union in it. Correct. Would you address what, one of your arguments, I think, in the briefs was this notion that the variety of T-shirts that are authorized under the dress code by Starbucks, they don't sort of open the door to allowing employees to then just wear whatever T-shirts they want, because the ones that are allowed are authorized to, let's say, speak a certain message that is consistent with Starbucks' corporate image, and I can't remember them all.  So, hooray for veterans, or it's Hispanic Heritage Month, or whatever it is. I can't remember how many there are. Correct. But the idea that I think you've advanced is that there's a curated set of messages that may be spoken through those corporate T-shirts, and the fact that a variety of those T-shirts are available to the employees doesn't hurt you under special circumstances. Yes, you're right. Could you just articulate what your argument is there, and how it plays out under special circumstances? Yes. So, I think it's important to keep in mind that these are all Starbucks T-shirts. They are T-shirts that Starbucks has issued and approved, either because they are available for purchase at Starbucks, or because they are issued by Starbucks to particular groups of employees that work for Starbucks. And, of course, we are a company. We sell Starbucks products, and there's nothing unusual about the fact that an employer would allow employees to wear Starbucks shirts, or the employer's shirts, and not any other shirt. We don't allow Giants jerseys. We don't allow Dunkin' Donuts shirts. We don't allow Nike solutions. What about shirts that promote values that Starbucks would like to have promoted, even though Starbucks has not mentioned those shirts? There are no such shirts of that kind, because the only shirts that are allowed are Starbucks shirts, or Starbucks partner network shirts. So, to give the court one example, one of the networks is for veterans, and Starbucks is a very proud employer of veterans, and we want our customers to know that we employ veterans. And so, it is just as much a part of our image as the rest of the dress code that we permit our veteran employees to wear a shirt identifying themselves as veterans. But is it? It's kind of inconsistent with the notion that no personal or cause-oriented messages can be displayed because of the steampunk hip vibe, when there's, in fact, a lot of other kinds of social issue messaging that Starbucks is allowing. So, unlike in the circumstance that Judge Newman faced in the neighborhood stores, where they were just Starbucks promoting pins, there's a lot of other social messaging that's happening, and it's a large and, you know, a kind of very active business place, where it's just not so purely limited to the public image hipster vibe that Starbucks describes as being its prerogative to control. So, we disagree with that. These, again, are a limited number. I think the record reflects 10 to 12 partner networks, and these are networks of Starbucks employees. The shirts promote coffee. I think the one example in the record is our Hispanic network shirt that Ora del Cafe, which, of course, means coffee hour in Spanish. They are just as consistent with the... The World AIDS Day, those are just pins, not t-shirts. Those are just pins, not t-shirts. Those are not allowed as t-shirts. This is just a detail, but is there a page in the record where, I can't remember now, you can just get a list of the partner network t-shirts. Is there a specific page, or? I don't believe that there is a place in the record that identifies all of them. I didn't think I had seen one. I saw references to examples, like the ones you've mentioned. I think that's all that's in the record, Your Honor. Let's just see. Are there any other questions? Right now, we've kept you considerably past your time. Oh, I have one question, and that is, you make an argument here, or the other side makes an argument, that you waive the claim of no issues. Issues are not permitted, dealing with religion, or politics, or that kind of thing. What is your response to that? Sure, so I would offer two responses to that. The first is, the Board does not dispute that we specifically accepted to the ALJ's conclusion that the prohibition on religious, political, and personal pins violates the NLRA. That's at JA 562, it's Exception 7 in our exceptions, as the D.C. And that was before the Board? That was before the Board, when we were appealing from the ALJ to the Board. As the D.C. Circuit held in the Pennsylvania State Collectional Officers Association case, that is sufficient to preserve an issue for appeal to a court. But even if a court thought that were not enough, it is just not the case that the brief supporting our exceptions, which that's what the Board points to. They point to the brief that accompanied our exceptions, and they say, you didn't do enough in that brief to explain that you were also challenging the conclusion as to the pins. But at page one of that brief, where we identified the issues presented, we identified the ALJ's conclusion as to our dress code policies, and then we pointed to Exception 7, which is the exception that relates to the prohibition on those kinds of pins. And we made perfectly clear that the dress code policies we were challenging or discussing in that brief were both policies, the shirt policy and the pin policy, and we made that again clear at page 15 of the exceptions brief. Okay. Thank you very much. Thank you. This is our dunk away. We have two minutes of rebuttal from you at the end. Why don't we turn now, I think the Order of Operations will be hearing from the MLRB, Mr. Kanzler. Is that right? Are you going next? Yes, Your Honor. Okay. So you may proceed. If I may have pleased before, Jared Tantor on behalf of the National Labor and Relations Board. Your Honors, as they have so often do, this case turns on special circumstances, which is a fact-based question. Here, the Board's findings that Syrinx 3 policies are unlawful rest on substantial evidence. And in making its findings, the Board relied on a well-established body of law stretching back 80 years to Republic Aviation, and that law seeks to accommodate employee interests and employer interests in the area of employees' right-to-wear, protected insignia or other paraphernalia in their workplace. So, Mr. Kantor, before we get into the meat and potatoes of your argument, would you mind zooming out along the same lines that we inquired of the appellant and tell us what, if any, level of deference you think is appropriate for this Court to exercise vis-à-vis the Board's decision? I heard you say substantial evidence, so I'm assuming that you're suggesting that is the standard we should apply. So, clarify whether that's true, and if so, what would be the basis for us to select that level of review? Your Honor, the review, and this was discussed in our brief, the review of the Board's factual findings is under the deferential substantial evidence standard, looking back to the Court's decision in the prior Starbucks case, looking at a provision much similar to these in the areas of law and substantial evidence. That's what the facts are, but I thought the facts here were pretty undisputed. I don't think anyone's disputing what the T-shirts say or what the dress code provisions say. Tell me if I'm missing anything, but I didn't think there were disputed facts, are there? Well, the company's reply brief says that there are none in dispute, but then in another part they say they largely are disputed. I mean, the Board's special circumstances... Well, they may be disputed as to whether they amount to... Correct. ...special circumstances, but the facts themselves underline that, not to mix that question of law and fact are not disputed. Correct? Correct, yes, and as we point out in our brief, the Court reviews the Board's legal conclusions to ensure that they have a reasonable basis in the law. That's Cavalli's tool, and in looking at the cases that the company cites in that reply brief... Could it possibly still be true that their legal conclusions have a reasonable basis in the law? That sounds very Chevron-ish. I thought if it's a pure and abstract question of law, we would have to, after Loper-Bright, review it de novo. I mean, if they say the statute means X, and we think it actually, if the best reading of the statute is Y, I don't think we're allowed to say, well, if I squint and look sideways, it could look like X. Well, several points, Your Honor. This is not a Loper-Bright case because this is not a statutory interpretation case. The Board is applying established law going back to Republic Aviation, essentially universally accepted by the point of appeal. From the premise, I thought of, if we're reviewing a purely legal question, which I think the legal question presupposes some understanding of the statute. Otherwise, I'm not sure what the legal question is if it's not grounded in the statute. What would be the source or the topic of the question, of the legal question, if not grounded? I mean, I guess in the Constitution. But what else would be the source of a legal question? Well, Your Honor, in a case where the Board is interpreting some part of the statute. Right, so that would be Loper-Bright, right? That's full-on Loper-Bright, right? It could very well be. Here, there's no interpreting of the statute occurring. This is an application of established law that predated Republic Aviation and then certainly follows from Republic Aviation. Okay, so then you have something that's not a pure question of law, but an application of law to fact. And I think you heard some of our discussion with the appellant, and I was asking how much the analogy to the agency review that we perform in immigration cases transfers over here. So, for example, in Wilkinson, the Supreme Court told us that application of a legal standard to undisputed facts gets some unspecified level of deference. They didn't need to get into what level of deference. Is that, in your view, where we are here? I mean, I don't think so, Your Honor. I mean, the company tries to make this de novo for multiple times. I'm asking you what you think we should be doing, because we have to figure it out. I mean, Your Honor, I think it's, as far as I'm aware, all the courts that examine the Board's decisions in these type cases have recognized substantial evidence review, including in the prior Starbucks case. I mean, these cases rise and fall on substantial evidence review. And certainly, as I pointed out, the Board's legal... It's not the substantial evidence. The evidence is undisputed. It's just the evidence. But the real question is how does it apply under the special circumstances test? And that's a mixed question. Because that's a... Special circumstances is a standard, in effect. So now we're looking at the facts in the light of that. And I see a difference. Maybe you could correct me on this. It's not a uniform body of law in that question, because you have the tension between Tesla and Walmart. You have the fifth circuit's decision in Tesla, which basically eschews that special circumstances test in favor of a greater balance between the company and Walmart. Following up, if I may, on Jeff Walker's observation, I don't see a continuum of law either. Since Republic, I see a development of a balancing theory, and then Tesla going quite far past Walmart and looking for any kind of possible interference with employees' organization rights so far so that it doesn't sound like balancing anymore, and then adds a new narrow tailoring requirement. Am I right in thinking that, or do narrow tailoring and that aspect of a balancing exist since Republic, in your view? So you have two or three questions by two different gentlemen. Good luck. And I will not add one to the mix. Thank you, Your Honors. I mean, I'll try to talk uniformly about both questions. As the board in its decision in Tesla was very clear, it was simply reaffirming established law in this area originating in Republic Aviation. The narrowly tailored requirement had this origin. I'm sorry to interrupt, but do you think that Tesla is standing and articulating that any interference even with a facially neutral policy is an unlawful act by an employer? Yes, Your Honor. That is the board's position from Tesla, that that was nothing new because the question is, is there a curtailment? That's coming from Republic Aviation. Is there a curtailment of an employee's right to wear protected insignia? And if there is, it's presumptively unlawful. But Tesla's policies are unlawful presumptively. Well, it depends, Your Honor. The company makes much of that, but they might implicitly be, but of course it depends on the policy and whether they prohibit. Just because there's a uniform policy doesn't mean it prohibits the wearing of protected insignia. Okay. So wait a minute. Let's just say someone works in a machine shop with all sorts of, you know, gears and cogs and things that could catch people and suck them into a machine, and there's a rule you can't wear jewelry, you can't wear, you know, even a wedding ring, and certainly no pins on your uniform. The only thing you can wear is this protective gear. You would say then that uniform thing, because it says, well, obviously no union pins can be worn, because no pins can be worn. It seems like you're saying that that's going to immediately kick in the presumption of unlawfulness, and it's only then in the balancing that it comes out that, well, okay, but now maybe the company wins in balancing, but we're going to start from a presumption of unlawfulness? Yes, Your Honor. Now, that type of case I don't think would end up being litigated. It would be, of course, ruled for. I'm not asking how the law works. I'm not asking whether it's an easy case. I'm suggesting it probably is an easy case, but the question is why is it an easy case? Is it easy because everyone knows that if you're out, you know, in this machinery that's going to suck you in with any metal or something, you can't have pins, or is it because there is no presumption of unlawfulness to begin with? And you're saying there is a presumption of unlawfulness. There is a presumption of unlawfulness. That is where we start, and just the justification is so elusive that, of course, you get over the presumption. Is that where you're coming from? Yes, because you go to special circumstances, and similar to the BACADA case where there was a type of rule like that and the justification was safety-based, but as it turned out in that case, the rule actually applied to mechanics or to employees, even when they were not intimately working on a car. So that's where these cases, of course, rise and fall very much on their specific facts. That's why there's no board rule saying employees get three or employees get four, or you have to allow. It's always a case-by-case development, and I think it shows that these end up being worked out. You know, the company sort of raises a parade of horribles that the board's decision here is going to cause an avalanche of litigation, but these cases arise few and far between, and the courts often enforce, and sometimes the courts respectfully disagree with the board on the evidence in the case. I do want to... Would you mind turning to the T-shirt question and skip over the pins for now, at least the lawfulness of the one pin as opposed to another? Would you address, let's assume for the sake of argument, that the special circumstances test applies, for the sake of my hypothetical question. Why is it that it's a problem under special circumstances for Starbucks to say, we are projecting a corporate image? It includes partly the so-called steampunk vibe, but also partly there are X number of messages that we are interested in sending out. For example, we support veterans, we support Hispanic Heritage Month, you know, whatever these 12 things are, but no more. There are no other messages, and therefore, you know, you can't be wearing a union T-shirt. You have to. If you're going to wear a T-shirt that has a logo or something, it's got to be a corporate logo. You can wear one of our T-shirts. Tell me why that's a problem under special circumstances test. Well, it's a problem in the sense that to justify that restriction, barring employees from wearing union T-shirts, you have to have a special circumstance. I mean, it's barring them from wearing anything except the, let's say, 12 corporate T-shirts. So, it's not just barring them from wearing union. They can't wear, you know, hooray for the Girl Scout cookie month or something. And it's just not one of the 12 things the corporation is trying to pitch to entice customers. You know, presumably they're trying to attract, you know, each T-shirt has a certain audience of potential customers they're trying to woo. So, why is it that they can't say, besides these 12 T-shirts, there are none other? Because employees have a right to wear union paraphernalia, including T-shirts. And to prohibit that right, you have to have a special circumstance. And here, they're arguing to the public that they have a right to wear union hats. Yes. And, I don't know, giant blinking sign sandwich boards that say, hooray for the union. If there was no sandwich boards, no sandwich boards can be worn. On these facts, maybe they would be able to prevail on the special circumstances defense. What? In a workplace where employees are wearing lots of sandwich boards, it's possible that the employee could wear that one. Okay, how about this? That's why it's fact. How about this then? Starbucks has a rule, as I understand, you have to wear just the plain apron, right? You can have pins on it, but just the plain apron, right? For certain positions, you have to wear the apron. Okay, so what if the union said, well, I want to come in, and it's going to be a different color apron with the colors and the logos of the union. They can do that too? Under your special circumstances test, they cannot be barred from doing that? They get the exception to that? That would be a factual analysis by the board in that case, depending on the specific facts. All right, take the facts of this case. The only variable you change is that this employee wanted to wear a bright orange apron that said, hooray for the union. That might be problematic on several points. No, I'm trying to figure out yes or no. I mean, I know it might be problematic. That's why I'm asking the question. I think that there are several points in that hypothetical that the board's analysis here and the facts might make that a special circumstance, including the color choice being bright and not muted, and also substituting a required piece of clothing. Unlike the T-shirts in this case, employees, besides the network shirts, they don't have to wear any of those things. The employees themselves are choosing whether they want to have those shirts or not. They can simply wear plain shirts in any of the approved muted colors. And certainly when you look at the shirt worn by the employee at J481-84, you can't even tell that she's wearing a union shirt. I did briefly on this issue, because there was a question about Tesla, I would just point out the very specific point that the Fifth Circuit had there on why special circumstances shouldn't apply. And the court was very particular, and it talked about three elements that were present there, including the fact that employees in that case had the freedom to attach any union insignia to any piece of the uniform. So you had a very narrow prohibition. You can't replace a company branded T-shirt with a similar color union T-shirt. Other than that, no restriction on employees' right to wear union insignia. This case, of course, is the inverse. You get the one channel, one union pin, everything else is prohibited. And so I think that's one way to distinguish what motivated the court in the Fifth Circuit in the Tesla case was that the prohibition was narrow, and therefore they didn't think special circumstances should apply. Could you address the narrow tailoring requirement? Yeah, we've gotten farther away from just the balancing kind of whole circumstances kind of approach that I saw in the Boston Hospital case and in Walmart, really, where you're looking at whether employees have opportunities in non-public-facing positions to communicate with each other their support for the union and to engage in collective activity, where you're looking at how uniform the employer's presentation to the public is, and you are doing kind of a balancing from one, taking all kinds of factors into account. Here we have, after Tesla, I think, at least the articulation, it's not the fact that Tesla, that there is a presumption against any restriction, and that the employer then has to present the special circumstances, and then that can be rebutted by the employees, and then the employer then has to come back again and show that this is the narrowest tailored possibility. So it feels like strict scrutiny that the employer can never win. Is that a misunderstanding? I mean, I've gone on a little bit, but you see what I mean? So it's not just a holistic kind of balancing, in which case the efforts of the board would make sense, but it's more of a shifting burdens with a very difficult-to-sustain burden by the employer. So have I misunderstood what the board is, how it's interpreting the act? Well, I don't know if it's interpreting the act in the sense, Your Honor, but the narrowly tailored requirement is part of the balancing analysis in the sense of going back to the Bonneconda example, okay, you've articulated that mechanics working on cars shouldn't be allowed to wear pins. That makes sense. But wait a minute, your rule prohibits all employees from wearing pins, including employees that work in the front office. So okay, you have a special circumstance, your policy makes sense, but it's still, it's not narrowly tailored to the reason that you're advancing. So in that case, the policy would still be unlawful because the reason that you're giving for the policy only is justified as to certain people that you're applying to. And that essentially is what the narrowly tailored requirement is, is that if your concern is W San Diego, if your concern is hotel employees in the winter wonderland wearing anything other than the one company pin, okay, that makes sense when they're interacting with customers. That's your public image. But you're also prohibiting them from wearing that when they're in the back end of the hotel interacting with their colleagues. So your rule has a special circumstance that justifies it, except your rule is still not narrowly tailored as to who it's applied to and where it's applied. And what about the board's own narrow tailoring? To the extent it struck down the general no messages policy to require Starbucks apparently to let employees wear either t-shirts or buttons promoting all kinds of personal causes. You know, free Palestine, you know, political matters for that matter. Well, Your Honor, the no advocacy pins policy is unlawful to the extent it prohibits employees from wearing pins that are advocating things that are connected to their terms and conditions of employment. But the employees don't say that, though. I don't think the order says that. It says that resents the no messages policy. And then it may promulgate a lawfully worded policy. Correct. But if the basis of the board's explanation as to why that policy is unlawful is that, speaking broadly, there's no carve out or disclaimer that pins advocating issues that are connected to their terms and conditions of employment. The example the board gives is a fight for $15, a fight for a $15 wage. That's connected to terms and conditions of employment. Maybe you consider that political. Maybe you consider that personal. But that's unquestionably a protected message that employees can bear in the workplace. Yes, so the order that the board is asking us to enforce says that the fire and retail shall cease and desist from maintaining an overly broad policy that prohibits employees from wearing pins or buttons that advocate for a political, religious, or personal issue. So if we were to enforce that, that would prevent employees from wearing any such pin, right? For a political issue, from wearing a vote for whoever issue. It would prevent the employees from wearing it? Sorry. It would prevent Cybert from enforcing that, but that could extend, thank you, but it extends to all kinds of non-union related matters, right? Well, no, Your Honor. Because employees' right is only as to whatever, whether you want to call it personal, political, religious, it has to be something connected to Section 7. I'm just quarreling with the order being overbroad. Okay, thank you. It is the standard board order in these types of cases. It requires rules to be rescinded. It gives the employer the right to promulgate a lawfully worded one, and that is something worked out in compliance. Okay, thank you. All right. Let me just ask if any other member of the panel has a question. We've kept you considerably past your time, but we do appreciate your arguments. Thank you. Why don't we turn now to counsel for Workers United, Attorney Gallo, who is here live with us. And Mr. Cantor, don't go away. You're going to want to follow it all by Zoom, but I'm going to ask our courtroom deputy to lead this in the monitor so we don't, we're not distracted up here. Good morning. May it please the court, Christina Gallo from Cohen, Weiss, and Simon for the interveners, Workers United. I wanted to take a moment to remind us what brought us here today. In September 2022, a handful of grocery employees engaged in a, quote, coordinated effort, end quote, to wear union t-shirts, i.e. insignia, under their aprons on the store's floor. This was part of a campaign to pressure Starbucks to bargain a first contract and increase the visibility of the union on the floor. Just begging the question, too. I mean, this has always struck me as an irony. How are they purporting to increase the visibility if their t-shirts are, as you say, hidden by the aprons? They weren't completely, excuse me, they weren't completely obscured by the aprons. Okay, so the argument that they're obscured by the aprons doesn't really help you because it feeds into Starbucks' argument that they are visible and that they do detract from whatever corporate message they were trying to send. So I feel like sometimes, you know, the other side is trying to have it both ways. Oh, no, they're hidden by the apron. What could be objectionable about these? But then the argument is we wanted them to be visible. So they're visible. They were aimed to be visible by everybody. Well, the intent was clearly to demonstrate union solidarity between and amongst the workers. Right, but no, no, that's the intent. But the only way to achieve that intent is to let people see the t-shirts. Yes, you're going with coworkers. And in the back of the house, especially, workers are going to be wearing the t-shirts. Well, you said more than the coworkers. You said it's visible underneath the apron part of it. Yeah, you can see in the pictures of JA481-84 how it is visible. It's partially obscured. So there's some portion that is visible. Could you start by focusing, because I think we're very familiar with the facts. Okay, great. Could you start with, I think we're all interested in some of these framing issues, because the Maybe one place I would ask you to start is, do you perceive there to be a difference between the Tesla and Aaron Terling standard and the special circumstances? I think I'm hearing from the NLRB no one's really the same thing. It doesn't sound like the same thing in practice. It sounds like what Judge Carney was asking about. It doesn't sound an awful lot like strict scrutiny. And I think if you look at our First Amendment cases, no one would ever say that strict scrutiny is the same as rational scrutiny, right? I mean, things lose. Policies generally get struck down under strict scrutiny far more easily than under rational scrutiny, which is a little bit more like ask. It's a little bit more balance-y. So how is it that the balancing test of Republic, I think the suggestion is, it's pretty much an Aaron Terling tailoring from the beginning. Explain how that could be true. Let me take one step back, which is to say that Republic Aviation, with the blessing of the Supreme Court also in Beth Israel, endorses the use of presumptions. Presumptions are what we use to help us balance these rights between employer and employee. In this particular case with Insignia, the presumptions, unlike in the case with certain solicitations, the presumptions are balanced in the favor of the employee. So that's step one. Then we have, when we take the special circumstances test, we're interested in its application to the very specific facts at issue. The public image exception to the special circumstances test, I just want to make sure this is clear on the record, asks does the insignia that the employee seeks to wear or do wear unreasonably interfere with the employer's public image. I just want to make sure that's clear. I'm sorry, I thought public image was a special circumstance. It would justify a restriction. Well, there are a number of different special circumstances categories. Public image is one of those categories. The point is, what I'm trying to say is how you assess the public image exception or public image special circumstance. If you say does this present an unreasonable interference to the employer's established image, its coherent image. Okay, moving back to your question now. I mean, your question was, okay, so we have these presumptions. Yeah. In another way, maybe to focus in like what you just said, taking that as a given, you just said that public image can be a special circumstance and you have to measure whether there's, whatever we're saying, unreasonable interference with it. Why is it, where does the narrow tailoring requirement come from that the only unreasonable interference would be one that, I don't know how you would phrase it, can only be overcome through narrow tailoring? Where does that fit? Where did we get narrow tailoring from? So, narrow tailoring came, well, it was imported in the board standards, or let me say, articulated into the board standards in 2015 when BACONDA was before the board. So, it went to the first circuit in 2015. I don't know the exact year before the board. So, in that case, they clearly articulated the narrow tailoring. The first circuit adopted that case and analyzed the narrow tailoring and the board in the BACONDA case said very specifically that we see the genesis of this narrow tailoring test in prior iterations of our cases. And Jared pointed out to one of our cases, he talked about W Hotel. In W Hotel, there was this very specific analysis that asked, is this prohibition on this button actually focused on what the employer's claimed interests are? The employer claimed that it was worried about its image vis-a-vis customers in the hotel. And the board said, you have told us, in fact, that you are concerned about customer image or response by customers because you said you only reinforce this on servers, servers who have contact with customers. You don't enforce this in back of the house. But that's just evidence of the rational connection between the policy and the interest. You know, that type of analysis is exactly what one would say if one were engaging in rational basis grouping. You'd say, well, yeah, the means is rationally connected to the purpose. And that's fine, but that analysis would not necessarily imply that it must be narrowly tailored to achieve that interest. It just could also say there must be a link, not that it must be the narrowest possible link. So that's where I'm not seeing why that analysis necessarily generates a narrow tailoring. So help me with that, why narrow tailoring is implicit in this system as opposed to it could fit with this system, it could be a perfect, it's an overlay, but why is it not still an overlay? Well, I think it is an overlay. And I think what your point a moment ago about the connection, this rational connection between the two things, right? I think on some level, I think we're kind of overstating the impact of this narrow tailoring. And I think we're getting away from the fact that the test presumes that employees' rights are at stake here, and it puts extra emphasis on employees' rights. The employees have the protected rights. Just to let you know, one of the questions I have in my head, and I don't know the answer to this, is if we were to determine that the narrow tailoring standards were incorrect, I think what I heard the appellant asking is for us to send this back to the NLRB, say you got the standard wrong, rethink this without narrow tailoring in the equation. I think that's at least one of the remedies that they would be happy with. I take it on your side, you would think we ought not to do that. So maybe articulate, let me retrain the question then. If we were to decide that narrow tailoring is improper framing of legal analysis, why would we not remand it to the NLRB for a redo? Because of the specific facts at issue in this case and the factual record that's been developed in this case. What we have here, and it was discussed at the beginning, the steampunk hipster chic, right? That's an anything goes mix and match uniform look. Yeah, non-uniform look, non-conformist look. It's not a look that has one image like the W Hotel, okay, where everyone wears all black and they wear black pants and they have one tiny adornment. We have here different color tops. Yes? So sorry, I'm hearing your answer to Judge Mardini's question, which is my question as well, is that even under general balancing, even if this is not strict scrutiny, it's where we'd be concerned about that on the facts here, the board has shown that this is an unreasonable interference with the employee's rights. That's sorry. Balancing, considering the totality of the circumstances, if we took a broader approach that didn't use the words narrow tailoring, that would still end up with the same order for the board that we should enforce. Yeah, that would be our position. We have heard a futility argument. When we engage in review of agency decisions, I thought what we usually do is if we say agency, you applied the wrong legal standard. We will only deny a petition for review if we think remand would be futile, that there is no doubt, and I mean no doubt in our mind, absolutely the board would come out the same way, even if they applied the correct legal standard in our view. But that we generally will say, well, how can we be sure about this, unless the facts are overwhelming, truly overwhelming. But if there's some discretion where we are supposed to be deferring in some respect to agency expertise, we say, you know what, we'd rather have you look at it first under the correct legal standard, and then we'll review it. We'll see what you have to say, and maybe you come out the same way. And again, I'm just drawing on the experience we usually have of the Board of Immigration Appeals, that we very often remand, so we got the legal standard wrong, do over. Why, I mean, do you agree it's the same futility analysis? We would have to find that there is no way that the board would come out, possibly come out the other way, so yeah, we might as well just affirm or deny the petition for review. I mean, what do we... I think that the board's ruling is based on substantial evidence. That's the standard. That wasn't disturbed by LOPER. This board has recognized that. I'm positing, and I know it's hypothetical, that they got the legal standard wrong. And the substantial evidence goes to the facts, right? Who was wearing an apron, what did the T-shirts look like? I don't think anyone, to my understanding, has disputed the facts. But if we were to say, well, wait, but you applied the wrong legal rule, then substantial evidence goes out the window, right? We're not worried about things that are reviewable for substantial evidence. If we say, well, you're applying the wrong standard to begin with. Well, the standard for board decisions that this court has adopted is that the legal conclusions have a reasonable basis in law, the fact is substantial evidence, and then if the... Is that still true? Can that possibly still be true after LOPER practice? Well, we want to draw your attention to Blue School, which we cited in our brief, where the court did not disturb, did not say that there was a different standard post-LOPER. But I also want to refer you to something else, which I think is very important, which is the Fifth Circuit's analysis of this issue, a special circumstances issue, in and out. Prior to TSLA, there was a case in and out in which the Fifth Circuit said, special circumstances is applicable, and in that particular case, and they said, we applied, quote, considerable deference, end quote, to the special circumstances framework and the application, the board's application to the facts of the case, despite the... That I understand. That I understand. That was kind of my Wilkinson point, that if we have application of a legal standard to undisputed facts, what the Supreme Court said to us in the immigration context is, you've got to apply some form of deference to that. In my hypothetical, the NLRB got the legal standard wrong. And now we're not saying it would be odd to me to apply deference to the board if they applied the wrong legal standard to an undisputed set of facts. That strikes me as... I guess I'm quibbling with the hypothetical here, which is I understand not what we're usually asked to do. But because I think this standard is so clearly articulated and it's been so long-standing, and it predates the Tesla decision, and the Tesla majority said this in their... What other... First of all... The board majority. Yeah, whose school is the summary order? I understand, yeah. We don't know. I don't know. I haven't looked closely to see how much the low-profile question was debated and so on. But we've been referred to Baconta and their First Circuit decision. My understanding is that there are a variety of approaches that have been articulated to how much deference is due to the board after Loper-Bright and the meaning of the citation to Hearst and to the discretion that was afforded to the agency early on. These are really quite unsettled questions. The standard of review and Loper-Bright were not extensively reached by you all here. So we're a little bit at loose ends, I think. It's not so settled as you might suggest. Well, to the extent that you do not feel settled on this, we think that the Fifth Circuit provides an instructive way to look at it in the in-and-out case with respect to the special circumstances test. Yeah, but then the vacatur of Tesla suggested a different kind of scrutiny, maybe. But it did not. But to draw a very specific attention to the facts, again, it did not disregard or say that the special circumstances test in and of itself was wrong. It said the special circumstances test shouldn't apply here under these very particular facts with a facially neutral, non-discriminatory rule that allowed for any amount of insignia to be emblazoned on an employee. That's not what we have in this case. And I think the facts, I want to make sure that the facts are clearly out here. We have, like I said, Sarge, to say something. As Judge Nardinian said, when no one seems to think that the facts are particularly disputed, it's how the law applies to the facts and what the law actually requires in these days. Because we have seen zigs and zags in the board's approach, and a lot has been gleaned from Republic Aviation, which has seen a 1945 case. But, you know, Walmart and Tesla seem to reflect a very big zig and zag in the road. And so we need help in understanding the statute and how much deference we owe to the agency after the bribe. Well, if I may, a couple of things. One, I would like to say that, so Walmart is in a detour. And we said it's a zig and a zag. It's a detour. It took the board away from where it had been for all those decades previously, and Tesla restored the board to where it had been all those decades previously. So that's exactly the opposite of what your adversary is saying. That Tesla is the ally, not the scapegoat. And that Walmart goes back to Republic Aviation. Do you disagree? I completely disagree. Really? I would like to tell you why I disagree. So Walmart said if there's not full, I believe, the Walmart, the board said, if there's not a full ban, then we don't apply the Republic Aviation test. We apply the Boeing standard, which has been since, which is a reasonableness test related to workplace rules. That has since been abandoned by the board in terms of how it applies to workplace rules. So Walmart relies on a test that no longer exists from the board's perspective. Also, the implication there is that Tesla or the Republic Aviation test, which I think is a better way to describe this test, doesn't apply to facially neutral partial bans. And it does. It has been applied with circuit court approval in numerous cases, and we cited those in our business. So we're saying the court has never said, quote, excuse me, had not said just because you infringe a little bit on worker Section 7 rights, that's okay. That's this whole idea that there's still a little bit of expression left. And it's not for employers to tell workers how to exercise their rights to speak. The language of Section 7 or Section 8 is very broad and difficult to interpret. So to interfere with could mean if you have a policy that makes someone slightly afraid that if they wear a somewhat larger pin or a smaller pin or it doesn't conform perfectly, that their ability to communicate with their coworkers is being influenced adversely and the act is being violated. And you can have this kind of imaginary perspective of things that interfere with it if you keep the broadest understanding of interfere. And so that's why I'm concerned that we're getting away from a, you know, yes, there's a presumption that there's a policy that says no pins, no insignias, no communications with your coworkers about anything related to organizing. That's currently a violation of the act. But there's so many different, especially in the public-facing setting, there's so many different ways that people can communicate or limit communication that I'm concerned that we get away from looking at the balancing that really is what's happened in the past several years since Republic and to come up with a circumstances test where, yes, the employer has to justify a facially neutral, even a facially neutral policy. But there's some recent application and a margin given to both sides rather than a strict scrutiny test in what we apply. Can you say that last part again? The balancing notion is what I saw growing up riding in Wal-Mart and kind of being abandoned in Tesla is being, that is, we're now in a more like a strict scrutiny analysis and presumptively unconstitutional matter such as away from rational basis using the two more standard analogies in the civil rights context. Well, I was starting to say earlier, and I think it's worth returning to, that we were talking about presumption, right, and why the board, excuse me, why the federal courts have blessed the use of presumptions by the board. And the reason for that is because 8A1 is very broad. And Beth Israel said you, the board, are entitled with your expertise to fill in the interstices of the act to tell us how we're supposed to, excuse me, for you to adjudicate how we determine that what things are unlawful under the act because of its broad prohibitory language, right? And so this is, the reason that we have this test is to address that issue, which is to say, okay, we have this panoply of factual situations that are going to be presented to us on this kind of issue of insignia. And so we have these presumptions because we recognize the worker's right to wear the insignia. But is that different than we have a facially neutral policy? It is not different than we have a facially neutral policy. This test, because the point of 8A1 is that it prohibits interference or, as this court said in 2012, curtailment, right? And you said, I think you said the word curtailment a minute ago. So it prohibits interference. A facially neutral rule that says you must wear only certain clothing and you can't wear other clothing interferes with the right to wear insignia in the same way that a rule that says you can only wear one union bin can, excuse me, interferes with the right to wear insignia. They're both interference. And the test is equipped, it's capacious enough to address both situations. Oh, but I wanted to say a couple of other things. You mentioned the point about public-facing employees. And I wanted to just point out that the case law has recognized that the mere fact that some employees are public-facing is not enough in and of itself to meet the special circumstances test. So here we have a pin that's allowed and a T-shirt is not allowed and the T-shirt wearing is highly regulated in accordance with, as your adversary says here, a general desire to create a vibe for this retail establishment. No one's limiting what the employees can wear when they're not public-facing as far as I know. And so that seems to me a reasonable position. They're allowing some communication through the pin, not proscribing all. And so why didn't the board take a more holistic approach in assessing this with the presumption that if all kinds of communication per union were proscribed, that that would be presumptively on labor practice? So a couple of things. One is that we talked about the partner network T-shirts before. The partner network T-shirts are not the only T-shirts that workers are allowed to wear. They're allowed to wear grocery-branded merchandise, Starbucks merchandise, their own T-shirts. There's also partner network pins. But wait a minute, their own T-shirts can't have messages on their own T-shirts, can they? No, those T-shirts are subject to the rule that's been challenged in this case. Right, they could wear a green T-shirt or whatever, but it can't have one that says, buy Girl Scout cookies today, right? No. Right. Understood. But this is not an unlimited and any other T-shirt they happen to have in their drawer. No, I just wanted to make sure the record was clear that it's not simply these partner network T-shirts that are the only T-shirts that workers can wear. They're company T-shirts, right? The only ones with messages are Starbucks or their Starbucks partner networks. And they're not explicitly recognizable as Starbucks shirts. But they're not selected by Starbucks to advance whatever message they like. Again, we like veterans, we like whatever, but you can't then say, I like Girl Scouts, because they just don't happen to be on the list, right? Yes, understood. But the point of this is that the messages – and a couple of things about this. The point is that the messages are extremely broad, right, that are allowed, and as the ALJ found, they invoke causes beyond the four walls. So they invoke causes and end or identities, but they don't allow workers to express another affiliation, which is a union affiliation. And that's one that's protected under law. The other ones aren't. So number two is they're not instantaneously recognizable as Starbucks clothing, as I just pointed out. And that's significant, because it does give the appearance of, from the perspective of the public, of anything goes. So the employer is saying, our identity, our image, is all of these different looks, plus these various causes. That's not what they – that's what they're saying today. That's not what the record shows. The record doesn't show us about policy. If the policy were you can wear a plain, subdued color shirt, no message, no design, no anything, and the only ones you can wear are Starbucks that have any design are Starbucks roastery design, then you wouldn't be making this argument, is that right? Can you repeat the question one more time?   If they didn't allow the Hispanic – the list of 14 that Judge Nardini set out, with the Hispanic network, the veterans, and so on, those other kinds of – if they just said you need to wear a plain T-shirt, and the only exception is you can wear a Starbucks logo T-shirt or a Starbucks design T-shirt, then you wouldn't be making the same argument. That would be a consistent dress policy, and Starbucks would be entitled to enforce that, and the union insignia on our pins, that would be a mess, is that right? No, we would still be making this argument because of the other facts about their dress code policy, which is that they allow the unlimited number of pins, the BLM pins, the World AIDS Day pins, and other Starbucks pins that aren't necessarily instantaneously recognizable as Starbucks. Didn't we all kind of decide that in 2012? I don't think the 2012 case controls, and we articulated that in our brief, and I think it's important to recognize that there are different circumstances with a different store and a different dress code at issue, and this is a fact-specific test. Also important to recognize that it's presumed that part of your question was about the one pin. Why isn't one pin enough? And to be frank, the courts have found partial bans on lawful – the boards with court approval have found partial bans on lawful in numerous cases, partial bans that allow a lot more expression than simply one pin. One pin is pretty much the bare minimum, and on top of the fact that it says one pin, it says it must be reasonably sized, reasonably placed, not interfere with customer relations, and there's a fourth criterion. No such criterion exists with respect to the BLM pin or the World AIDS Day pin, right? Let me just check with the members of the panel and see whether they have any further questions for you. No, I think we've heard your argument. We thank you very much. We're going to hear from counsel for the appellant who's reserved two minutes, believe it or not, for rebuttal. We are going to ask you to be remarkably succinct. Thank you. Thank you. Keep in mind that we have, of course, as you see, we've read your briefs all around, so if there are any two minutes, 120 seconds worth of highlights. I've got five points, but I'm going to be super succinct. Number one, the board cited substantial evidence standards. This court has never applied that when assessing a special circumstances case. Number two, the board said repeatedly they are not construing the statute. Respectfully, that is the problem in this case. They are not construing the statute. They are not applying the statute. They are purporting to apply judicial precedent. This court owes no deference to the board's construction of judicial precedent. The board claims this standard comes from Republic Aviation and the decades of cases since then. It does not. I urge the court to read the cases at page 43 of the board's brief. It cites ten cases that it claims supports this standard. Almost all of them involve complete bans on union insignia. They are not cases like this one. Number three, as to narrow tailoring, the board just made it up in 2015 in the Bach Imports case. It does not come from anything. It is a strict scrutiny test, and the best proof of that is the board has not pointed to any case where it has applied its narrow tailoring test and it has ruled for an employer. Number four, as to the futility question that your Honor asked, I think the other problem with that would be Chenery, that under Chenery the court cannot affirm an order of the board on different grounds. And then fifth, I'm going to make it through all five, the board claims that this case is different than Tesla because in Tesla the employees could wear as many stickers as they want. That is, of course, a factual difference. The other factual difference is that these are public-facing employees. Those kinds of facts are all of the facts that should be considered in a true balancing analysis. How much union expression can they wear? Are they public-facing? All of those kinds of facts should be taken into account, and the test that the board applies in Tesla does not allow for proper consideration of all of those factors. Thank you. Admirably efficient rebuttal. We urge the court to deny enforcement. I want to thank all counsel, including hopefully Mr. Cantor can still hear us from the NLRB via Zoom. Very, very helpful oral arguments all around by everyone. We thank you very much for your time, and we will take the case under advisement.